We're prepared to hear the arguments this morning, so in the first case, 24-3041, we have the United States v. State of Kansas Department of Health & Environment. I understand the United States counsel is appearing on the screen, and so we welcome you and the appellant can proceed. Thank you. Good morning. Good morning, Your Honors. I may have pleased the Court. Janay Lamar for the United States. Thank you again for allowing me to speak. Thank you for allowing me to appear remotely in this case. USERA's definition of employer, by its text, focuses on the function that a person or entity plays in a service member's appointment. The district court was therefore correct when it first recited USERA's definition and acknowledged that employer is intended to encompass more than the traditional single-employer relationship. Where the district court erred is where it strayed from the statute-based definition and instead proposed a formalistic requirement that only those entities that have complete authority over certain formal aspects of employment may be a USERA employer. The district court then compounded this error by disregarding the settled standard at summary judgment stage, requiring courts to accept all evidence in the non-movement's favor and to make all reasonable inferences in the non-movement's favor. These two errors warrant reversal. Turning first to USERA's definitions of employer, the statute has two definitions relevant to this case. First, it says that an employer is a person or entity that has control over employment opportunities. Second, it says an employer is a person or entity that has employment-related responsibilities. The United States entered evidence satisfying both of these definitions and in both instances the district court erroneously disregarded these function-based definitions and said that the United States had not presented enough evidence to survive summary judgment because only those with formal and complete authority over certain aspects of employment could be a USERA employer. Ms. Lamarck, if I may, let me just ask an order of process question. If we were to agree with you that the district court erred in its interpretation of employer, the second issue relates essentially to the application of the summary judgment standard, if I understand it correctly, and so if we reach the first issue of the court misinterpreting the definition of employer, wouldn't it make sense to then remand to allow the court to consider the summary judgment motion under the appropriate definition of employer? Yes, Your Honor, we do believe that a remand is appropriate, but we believe that the court should address both errors in this instance, both claims of error. The district court, if it were to go back and consider the appropriate definition of employer, still has to do so while considering all evidence in the light most favorable to the United States and making all inferences in the light most favorable to the United States. If I may pause you for a second. Well, that's the law. I mean, it's not like we're making law on that. That is the law, and so why should we presume the court's not going to follow the law when we remand it back to apply the right legal lens to the interpretation? I mean, counsel can make the argument below to the court that it misinterpreted the summary judgment standard and show it legions, a legion of cases that would say what the summary judgment standard is. So, I mean, why is it necessary for us to apply that new, let's assume we agree with you, why is it necessary for us to apply that legal lens ourselves? I mean, I think the error is significant enough where the district court has indicated or demonstrated that it had some difficulty in actually applying the summary judgment standard as required by this court. And I think the Supreme Court statement in Toled, where it, even in its limited jurisdiction, where it doesn't take cases just because there was an error, the Supreme Court found that a clear misapprehension of the summary judgment standard warranted their intervention and warranted reversal on those grounds. And so I think given the district court's record in this case, and considering these two motions, these cross motions for summary judgment, and not taking the albeit difficult step of shifting its perspective and considering the United States evidence in the light most favorable to the United States and making all reasonable inferences there in that favor, before granting Kinsey's motion, demonstrates a misapprehension of that standard that the Supreme Court has recognized is worthy of addressing and reversing when that misapprehension happens. Ms. Lamar, in that connection, the district court found, and it was undisputed, so necessarily found, that Mr. Kalogue, did I pronounce that right? Kalogue? Your Honor, I apologize, I'm not sure who you're referring to. No, the gentleman that was the predecessor to Vandervelde. Mr. Coppedge, Mr. Derek Coppedge. Coppedge, okay. The district court found that he was present at the interview. Yes, sir. The depositions would suggest that is a dramatic understatement. His deposition indicates how he generally participated in those interviews of these employees of the respective counties. Wouldn't that suggest that if we agree with you, that we send it back for the district judge to elaborate on what evidence there is suggesting that summary judgment is inappropriate? For example, in that one, you can elaborate on what the disputed evidence is, the nature of that gentleman's participation in the interview process, which seems to be an inappropriate factor to consider whether or not Kansas was an indirect employee. What do you say to that? That was kind of long-winded. Absolutely, Your Honor. Absolutely, Your Honor. The United States agrees that that evidence absolutely demonstrates both that Kansas had control over her employment opportunities and had employment-related responsibilities as to her. As you've referenced, Derek Coppedge was present during the interview and was not only present, but he asked questions, he ranked candidates, he weighed in on each candidate's candidacy. You're taking that where you want to go, but where I want to go is, doesn't that suggest it should be a remand, if we agree with you, rather than an outright reversal in our making our own view of the evidence? Similar to what Judge Holmes was asking. Well, sure, Your Honor. To be clear, the United States is not asking this Court to decide as a matter of law that Kansas was one of its employers. The United States is simply asking this Court to review the record de novo and to determine that the district court erred when deciding as a matter of law that Kansas could not be an employer. Okay, so then you're not suggesting that we remand for a trial. You're saying that we should remand for consideration under the proper standard and the application of that standard. Is that correct? Your Honor, we are asking this Court to find that the Court misapplied the legal standard and to reverse the Court's conclusion that Kansas could not be an employer as a matter of law. At that point, the district court would then go on to consider, would deny Kansas' motion as to whether or not Kansas was an employer and would go on to consider the other issues that were raised at the summary judgment stage. There were other issues raised by both parties. And so when the district court denies the motion on this ground, the district court would then have the opportunity to address the rest of the motion, and at that point the Court would determine whether or not there were trial issues that needed to be seen by a jury. So, I'm still a little confused. So, with respect to the question of whether Kansas is an employer here, you're suggesting that we reverse, remand, and let it go to the jury? Or are you suggesting we reverse, remand, and tell the district judge to reconsider under the correct summary judgment standard? And I know I'm asking the same question, but I'm still a little confused. Sure, Your Honor. So, in this instance, we are not asking, so, we filed our own motion for summary judgment, and in our motion, we asked the Court to find, as a matter of law, that Kansas was an employer. The district court found, denied our motion. We are not appealing that denial, and so we are not asking the Court to go back and reconsider that motion or question, or either of those questions. Instead, we are asking this Court to find, reviewing de novo as it is authorized to do, that the Court misapplied this, that there were, in fact, facts, disputed genuine issues of material fact as to this issue of employer when you were considering the proper standard or proper meaning of what employer means. And once this Court advises or instructs the district court as to what Lucero's employer means, the district court can then hold that issue to go to the jury and consider the remaining issues that were raised in summary judgment. Okay, so you are saying you want us to remand for this to go, the issue of whether Kansas is an employer, to go to the jury? Yes, Your Honor. Okay. On the question of Mr. Coppedge's participation, the reliance on that to support your argument about the employer status of Kansas, did you make that argument before the district court? I did not see that in the briefing before the district court. Yes, Your Honor. Yes, we did. We cited Derek Coppedge's testimony. Both briefs discussed the fact and agreed that Derek Coppedge was involved in the interview process. There was also evidence that Derek Coppedge supervised Ms. Gonzalez on a regular basis. And to be clear, there is a distinction between saying, having in the summary judgment record or in the briefing, that he participated in relying on it as part of a legal argument. And I'm asking about the latter. So did you in fact rely upon his participation as bolstering the argument that Kansas is an employer? Yes, Your Honor, I believe we did. I believe that was one of the critical issues that we raised. And the district court's order addressed that legal argument. It addressed our argument that Derek Coppedge's participation in the interview demonstrated that Kansas was one of Ms. Gonzalez's employers.  In addition to Derek Coppedge's participation in the interview, as we have previously discussed, there was also evidence indicating that Kansas had control over her employment opportunities at every stage. Throughout her employment, they were involved in supervising the substance of her work. They were the only entity that reviewed the substance of her work. They performed performance evaluations on at least two instances. And then they provided regular and those performance evaluations were their statewide evaluations. They also, when giving regular information to Finney County, gave Finney County the substance of review that they had performed. So that Finney County had something to say in their evaluations. As to the employment related responsibilities in addition to participating in the interview in addition to these performance evaluations, this wasn't just a grantor that audited records. In addition to auditing records and requiring certain file keeping, Kansas was also actually traveling with Ms. Gonzalez as she did her work. They went in the field with her. They told her how to get to the community members she was seeking to serve. They told her what questions to ask. This is just another piece of evidence that clearly demonstrates that Kansas was taking on employment related responsibilities just as it did with its directly employed disease intervention specialist as Ms. Gonzalez. I understood as part of your characterization of what it means to be an employer that you spoke of anyone who provides input on hiring and firing decisions. With that understanding in mind, it's hard for me to see if that is the substance of it, what the limiting principle is. As a grantor, I could have the government recipient, the grantee could contact me and ask me whether somebody is doing a good job or not. If I respond that they are not doing a good job, have I provided sufficient input to therefore make me an employer relative to that individual? No, Your Honor. I would like to answer your question but I would also like to acknowledge that I would like to reserve some time for rebuttal. No, Your Honor, that would not be sufficient. Courts have found that a mere statement of dissatisfaction does not create an employer relationship. Kansas chose to do more than that. Kansas didn't just state its dissatisfaction with Ms. Gonzalez. Kansas managed Ms. Gonzalez. Hold on. There is a distinction. There is one issue here of purely how we interpret the definition of employer. My question is going to that. It is not going to what Kansas did in the application of the Summary Judgment Standard. Those are two separate things as broken out in your own brief. My question is, as it relates to how we should conceptualize an employer, then what is the distinction? Is it management beyond offering input? Is that what you're saying in terms of the definition of it? In terms of the definition, there are multiple factors that should be considered. A mere statement of dissatisfaction would not be sufficient. But additional evidence of supervision, additional evidence of performance evaluations, additional evidence of daily interaction, additional evidence of training, of setting the terms of the position. Kansas could have decided to simply lay out general parameters of what they wanted with the grant and left Benning County to manage its employee as it chose. Because it didn't do so, because it did these numerous other instances, there was sufficient evidence to demonstrate that Kansas was one of Gonzales' employers, or at least there was a triumphant issue as to that fact. I will give you a little time. I'll give you a little time for rebuttal. Thank you. We'll hear from the closing counsel now. Thank you. May it please the Court, David R. Cooper for the Appellate Kansas Department of Health and Environment. As a matter of law, KDHE was not Ms. Gonzales' employer under USERRA and thus she wasn't KDHE's employee. The USERRA definition of employer is the heart of the case from our point of view and that's found at 38 U.S.C. 4303 and it appears to the appellee that the government is attempting to expand Congress' definition of an employer and in counsel's statement and in their brief, they're referring to the text of the statute focusing on functions. No, the text of the statute explicitly says that an employer is either an entity that pays a salary or wages for work performed or that has control over employment opportunities. And then it goes on to say including other persons or entities to whom the employer has delegated employment related responsibilities. Does employment opportunities including interviewing for the job?  Alright. So you don't think it makes any difference that Cottage actively participated in the interview of county DIS employees? It could, but it does not on these facts. You said no, it doesn't. You said the interviewing process and the hiring process is not within the phrase control over employment opportunities. Mere participation in the employment interviews does not equate to control over employment opportunities. You're focusing on control rather than employment opportunities. I am. As does the text of the statute. Let me ask you this. And I'm focusing a lot more because the evidence was clear during the Vanderbilt regime they did these these job evaluations and they're in two parts. The top part is basic job performance and the bottom part is general work performance. Would you agree tell me if this is wrong because I read those, we didn't have many that it appeared that on basic job performance that Goss basically adopted what had been said by Vanderbilt in her performance evaluation. But on the second part the general work performance she was talking about administrative things in the office, how she got along the fact there were problems with nurses and it was more the routine parts of a job rather than the performance of the essential duties of DIS in the top portion, basic job performance. Tell me why that's a wrong view. Okay. Several things. First what's in the record as the performance evaluations in KDHE's files those are unsigned those are not performance evaluations in the state's performance evaluation system because Ms. Gonzales was not an employee in the system. And those were never seen by Ms. Goss or Ms. Gonzales. They weren't seen by Ms. Goss? No. Separately KDHE reported on a regular basis just the numbers those went down all the time. And the record shows that both Mr. Coppedge and Ms. Vanderveld sent performance statistics. How many patients has she seen? How many interviews has she done? How many completed interviews do we have? All of those sorts of things. Which is an important part of the job. Correct. But those are performance factors for the grant. Those are the deliverables under the grant. But weren't those incorporated effectively in the Goss when Goss filled out her form I think it's in handwritten form that she basically reiterated what had been said in the top part by Kansas on basic job performance? I can't say that I agree that she copied those from. I'm not saying copied. But in terms of those numbers were reported as part of the deliverables on the grant and yes Ms. Goss as Ms. Vanderveld and her supervisor included those. In other words those are the deliverables under the grant and here's how you are actually performing on those deliverables. Didn't Goss testify in her deposition that she wouldn't know how to go about evaluating a DIS in how they perform the substances part of her job? And Ms. Vanderveld I think testified or somebody testified that Vanderveld said well I'll teach you how to do that. Ms. Goss said I don't know how to do the DIS job and then we're talking about the period of time in 2010 when they discovered the 96 patients who had not been contacted by Ms. Gonzales they were just stuffed in a drawer and nothing done. Doesn't that suggest then that she would basically had to rely upon Vanderveld or Vanderveld's predecessor for evaluation of the job performance the substantive job performance of Gonzales?  Does it at least have a little of that suggestion? I can't agree well does the information coming from the grantor saying here's what the performance on your grant has been. You're either meeting the grant requirements or you are not meeting the grant requirements. Yes. By definition that would have to be. As I understood that wasn't the question. The question focused on the fact that she said Ms. Goss that she did not know how to do the substance of Ms. Gonzales' job and if she doesn't know how to do the substance of it well let's say supervise the substance of it then why doesn't that make Ms. Gonzales the employer and have an employee and being the operative article there and an employee of Kansas which does know how to do it? Because the way that conversation occurred and the way it reads in the record is that Ms. Goss as the Finney County Health Director was being told you have to get the deliverables up to spec and Ms. Goss says I don't know how to do that because I don't know how to do the job. She was being told it's your job as the Finney County Health Department to meet the deliverables and if you don't know how we'll show you. And if she was an employer of that function why would she not know how to do the substance of it? How would she not know how to evaluate it? I mean if I'm an employee and I don't know what the employee is doing that doesn't make me much of an employer does it? I disagree with that in a great deal. And explain why you disagree with it and give me your best case that supports your view as it relates to this. The example would be in this case Ms. Goss was the Finney County Health Director. She is not an MD and she would not know how to appropriately assess whether a physician was appropriately performing evaluations and case assessments in her health department. Well, we're not talking about a physician. We're talking about somebody who was undertaking a job for which Ms. Goss purported to do an evaluation of her. So if Ms. Goss does an evaluation of her and a portion of that job I can just say a portion of that job, she does not know anything about it. Why doesn't that lend to the view that that portion of the job must have a different employer? Because the employer, the definition of employer under 4303 requires either you're the one paying the salary or wages or you control the employment opportunities. And here Finney County was a grant recipient with specified deliverables and the portion of the evaluation that Judge Murphy is referring to is Here is the report on your deliverables. We sent you a hundred and twelve sexually transmitted disease cases to investigate. You did nine of them. Well, in this case it is true that Kansas had the control over the employment opportunity. In fact Kansas, by canceling the grant, resulted in Ms. Gonzalez being terminated. And so it seems to me that they're the one that actually made the decision to terminate her and they did it by cancelling the grant. And I respectfully disagree, Judge. Let me call your attention. We don't have a lot of law under this statute on what an employer is, but the Supreme Court has directed us to look at, for example, Title 7 for help in the employment area. And the Tenth Circuit has a case, I don't know how to pronounce it, SANOVA versus National Statistics and Technology where it was similar it was a grant to the University of Colorado and this court held that the one who terminated the employee was the one who issued the grant because by terminating the grant, they de facto terminated the employee. And in this instance, the termination of the grant is not the de facto cause of Ms. Gonzalez's termination. She was offered an alternate position with Finney County. She was terminated from this position. Again, the position she held was an employment position with Finney County. The issue here is whether Kansas was her employer to do this job. That doesn't mean that Kansas is their employer for any job she might do for the county but the issue is whether Kansas was an employer for her doing this job. And I respectfully disagree because 4303 43034 requires either the payment of the salary or wages or control over employment opportunities. Would you say terminating someone means you have control over their employment opportunities? It would but the state did not terminate Ms. Gonzalez's employment. Finney County did. Finney County offered her alternate employment which Ms. Gonzalez declined. Go ahead. I'm sorry. The way you're talking well, let me ask you tell me what's wrong with this. It appears that the DC the district court was saying that a grant administrator cannot be an employer. Why is that wrong? That's one reading you can make of the decision. I don't read the decision that way. What I read the decision is saying is under the facts of this case the grant administrator did not have control over Ms. Gonzalez's employment opportunities and therefore was not her employer under USERRA. And that same decision said that Coppedge was merely present at the interview, correct? The text of that decision says Mr. Coppedge was present, he had a list of questions that he asked he ranked her and he made a recommendation that agreed with the other persons interviewing her that she was the best candidate. He voted on it. Again, the three but his vote carried no sway they didn't have to hire her just because he voted for her the best candidate. Well I mean the issue, it doesn't say he has to have absolute control, he just has to have control over her employment opportunity. And on this record the state of Kansas did not have control over Ms. Gonzalez's employment opportunities.  Finn County was free to employ anybody they wanted to to perform these functions and because Ms. Gonzalez was not performing them, Ms. Goss was free to perform them herself and in fact she said, I don't have time to learn that, I don't have time to do it I don't want the grant anymore. What's wrong with this approach? Understanding there may be some dispute as to the participation of Coppedge in the interview in interviews of all county DICs there's some question about Kansas' involvement in the evaluation process and then they have this conference when she's terminated and you have the view from the circuit as recited by Judge McHugh what's wrong with saying let's send this to the jury for the jury to be instructed that a grant administrator is a grant administrator and as such is not an indirect employer but you jury are to determine whether or not the grant administrator in this case under the facts and the evidence you've heard is in fact an indirect employer because it had direct participation in the selection process it had direct participation in the evaluation process and direct participation in the ending of her employment by means of the grant what's wrong with that? The answer to that question Judge is because it strays from the definition Congress gave us for an employer under 4303 it's control over employment opportunities and those factors do not show control over employment opportunities It doesn't say absolute control it says it has control over employment opportunities correct? That is the text of the statute and with respect to the definition of employer and employee and here they didn't define employee and Supreme Court directs us when we have that circumstance you look to the common law for control over employment and frankly the facts don't support that Seeing no further questions Would you give the appellant a minute please Thank you your honors I just want to address two things briefly in his discussion with your honors Kansas' counsel spoke about how this is just a map focusing on the control that Kansas had but to be clear the district court defined control and no one is disputing that definition the district court said that control was to have the power or authority to guide or manage and the United States absolutely entered evidence that demonstrated that Kansas had the authority to guide or manage Ms. Gonzalez's employment satisfying the definition in addition to the other definition that neither the district court nor appellate has addressed that being having work or having employment related responsibilities Secondly the Kansas' response here in its brief demonstrates why this court should address the summary judgment error because his recitation of the facts to defend the district court's order simply recites Kansas' interpretation Kansas' favorable inferences and at the summary judgment stage that is inappropriate. For these reasons we ask this court to reverse the district court's ruling and state that it's application of the employer definition was too narrow was not focused on the function as required and that it misapplied the summary judgment standard Thank you your honors Thank you Case is submitted